## NIDAY v. CITY OF BELLAIRE.

### No. 12344.

Court of Civil Appeals of Texas. Galveston.

July 10, 1952.

John A. Black, Jr., Houston, for appellant.

Paul Strong, Houston, for appellee.

CODY, Justice.

This was a suit by appellant against the City of Bellaire seeking to have the court (1) adjudge that the City's comprehensive zoning ordinance No. 126 was invalid insofar as it prohibits the use of appellant's property for a retail business, and (2), as ancillary thereto, compel the City to issue him a permit to construct a retail business building on any part of his said land, with off-street parking facilities, etc.

On May 7, 1939, the City of Bellaire, pursuant to arts. 1011a–1011j, Vernon's Texas Civil Statutes, by ordinance adopted a comprehensive zoning plan restricting certain areas to residence use and permitting business houses in others. Since that time the City has brought into its corporate limits additional areas including three acres belonging to appellant. Appellant's land was included in the area which was annexed on April 15, 1946, and the area which was then annexed was temporarily placed in a residential district. On September 16, 1946, the City subjected appellant's property to its present status as being for residential and retail business use.

Thereafter, on April 19, 1950, the City, after due notice and several months of hearings, of which appellant had actual knowledge, and without any protest from appellant, re-enacted and amended its Zoning Ordinance. This worked no change in the status of appellant's property being for residence and retail business uses. Thereafter, appellant secured a favorable recommendation from the zoning Commission to change the status of his property from being part residential and part retail business, into being all business property. He then applied to the City Council to make the change which the zoning Commission had so recommended, and hearings were held by the City Council and property owners who conceived themselves to be adversely interested, appeared to oppose the recommended change. The Council declined to grant appellant's application for the recommended change. The appellant then instituted this suit to compel the City Council to make the change he desired, but in this legal proceeding appellant has limited his application to change the status of his 3 acres by seeking to change only his easterly half, or 1½ acres thereof. The following sketch of appellant's property, which is all that is involved in this proceeding, is copied from his brief. Upon it will be found Richmond Road, which is a heavily traveled street running through Bellaire, West University Place and into the City of Houston, and Avenue A, and Oak Street.

What is hereafter stated in this opinion will refer solely to appellant's property shown on the following sketch. When the triangular portion of it is referred to, it

will be as Tract B, and the south 200 feet of it, in the form of a parallelogram, as Tract A.

When appellant's property was brought into the City, there was located on Tract A a commercial retail nursery, a florist shop with greenhouses, commercial gardens, and a machine shop operated in connection therewith. In early 1946, and probably before the property was annexed to Bellaire,

appellant placed on Tract A a retail drive-in grocery or tavern, which fronts on Richmond Road. On Tract B were two houses used for residences which will later be briefly referred to, but it may be now stated that these residences were used by appellant or some one who was employed by him to work in the business he maintained on Tract A. A portion of the greenhouse was on Tract B, and such portion was converted into residential use.

The court, trying the case without a jury, denied all relief sought by appellant, and sustained the residential zoning of Tract B, which, of course, was the only portion of the zoning ordinance which appellant assails as invalid. In response to appellant's request for findings and for supplemental findings of fact, the court made such comprehensive and detailed findings that their volume (they cover ten full pages of the transcript) prevents them being here set forth.

Appellant predicates his appeal upon nine formal points covering three pages of his brief. We can indicate their substance by stating appellant's position with reference to the trial court's conclusions of fact and law. The trial court in substance made findings of fact to the effect that an extension of the retail business zone so as to include Tract B, in order to enable appellant to construct a large building so as to make a business center covering the entire property, would (1) increase traffic and traffic hazards, including the amount of parking upon Oak Street, which is in the residential section, (2) increase the congestion already existing on Richmond Road and Avenue A, (3) require a larger water main and more fire plugs, (4) require additional garbage disposal equipment and personnel, (5) require more attention from the Police Department, and (6) enhance the danger to public health, safety, comfort and welfare. By his points 1–6, appellant assails these fact conclusions upon the ground that he now has the legal right, under the zoning ordinance, to construct a business center upon Tract A, subject to the City's regulation that he shall leave two square feet of parking space for each square foot of floor space, and that the construction of such a business center upon Tract A alone would have all the effects just referred to; that the extension of the business center to the entire property would require that two additional square feet for accessory off-street parking be reserved for each square foot of the floor space of the business building erected on the entire tract; and that such extension might indeed increase the load on the water main, garbage disposal equipment, etc., but that would constitute all such increase.

By his 7th and 8th points appellant attacks the court's conclusions as to the fitness of Tract B for residential use. And by his 9th point appellant attacks the court's conclusion that appellant did not discharge his burden to prove, as a matter of law, that the zoning of triangular Tract B for residential use bore no reasonable relation to the public health, safety, morals or general welfare of the City of Bellaire.

We overrule appellant's points.

■■ It is well settled that the zoning power conferred on municipalities by Articles 1011a–1011j can be sustained only as an exercise of the police power to safeguard the health, comfort and general welfare of its citizens by such reasonable regulations as are necessary for that purpose, and is subordinate to the citizen's right to acquire property and deal with it as he pleases, so long as he does not use it so as to harm another, and that regulations interfering with property rights are invalid if founded upon purely aesthetic consideration. Lombardo v. City of Dallas, 124 Tex. 1, 73 S.W.2d 475; City of Dallas v. Lively, Tex.Civ.App., 161 S.W.2d 895, writ refused; Ellis v. City of West University Place, 141 Tex. 608, 175 S.W.2d 396; Edge v. City of Bellaire, Tex. Civ.App., 200 S.W.2d 224, writ refused. An examination of Articles 1011a–1011j, shows that they are carefully framed so as to come within the field covered by the police power. They provide that regulations made by a municipality must conform to a comprehensive plan to lessen congestion in the streets, secure safety from fire, panic, promote health and the general welfare, prevent undue concentration of population, to facilitate the adequate provision for water and disposal of sewerage, etc., etc.

And "* * * Such regulations shall be made with reasonable consideration, among other things, to the character of the district and its peculiar suitability for particular uses, and with a view to conserving the value of buildings and encouraging the most appropriate use of land throughout such municipality * * *."

It is also well settled that the municipality may determine in the first instance whether or not the facts or conditions warrant a particular classification or restriction. And the party complaining of the restriction has the burden of showing, as a matter of law, that the complained-of restriction cannot be sustained as being a valid exercise of the police power granted municipalities within the frame work of aforesaid arts. 1011a–1011j. The Lively case, supra; the Edge case, supra; King v. Guerra, Tex.Civ.App., 1 S.W.2d 373, writ refused; City of University Park v. Hoblitzelle, Tex.Civ.App., 150 S.W.2d 169. So, if there is any substantial evidence to sustain the complained-of restriction adopted by the governing body of the municipality, the same must be sustained as being valid.

It is as unnecessary as it is impracticable to review, in this opinion, the mass of evidence,—the photographs, maps, and blue print of the location of the proposed building on Tracts A and B—which was introduced on the trial. The court's action in sustaining the restriction placed on Tract B is sustained by the following substantial evidence, which appellee incorporated in its single counter-point, in these words, "Two residences on the triangle in question were being lived in and occupied by the families of appellant's tenants at rentals totaling ninety five dollars per month, and had been occupied as residences for several years by appellant's tenants and family; these two residences faced three other residences across Oak Street [except a prior non-conforming one across from Tract B]; it was practicable to continue the residential use of the triangle in question; its admitted residential bare land value of $1500.00 is about the same as the value of other residence property on Oak Street; 77 new residences were being put in on Oak Street slightly to the west; no business property

fronted on Oak Street; as business property the triangle would depreciate the residence property across Oak Street; where business property is situated adjoining or across from residential it seeks to become in turn business property; there was opposition at the zoning hearing from appellant's neighbors to zoning the triangle as he requested; although notified, appellant did not choose to appear before the City Council at its hearing in 1950 when the zoning ordinance was overhauled and ask for the changes sought here, although he had been on the Planning Board before and knew the procedure; zoned as business it would cause the city additional expense and problems in connection with parking on Oak Street, traffic increase and hazards; paving on Oak Street and Avenue A, the bridge at Avenue A and Oak Street, trash disposal, water, sewerage, fire and police protection; and the City Council had no animus against appellant in zoning the property in question as residential."

Generally speaking, it would seem that wherever zoning is imposed an owner of residential property which is adjacent to the business district becomes concerned, and understandably so, that he does not realize the greater speculative value which would attach to his property if it were given the status of business property. But the governing body must draw the line somewhere, and the line of demarcation must, in the nature of things, be drawn on a district-wide basis and not on the basis of a lot or two. This practical consideration is recognized in the statute quoted above, to the effect that the restrictions must be imposed with reasonable consideration "to the character of the *district* and its peculiar suitability for particular uses." Appellant is not here complaining that the council, by retaining, in Ordinance No. 126, the restriction which was imposed on Tract B in 1946, has thereby made a change in restriction which is confiscatory. Admittedly no change in the status of Tract B was wrought by the Council in passing Ordinance No. 126. To the contrary, appellant's complaint is that the Council did not change the status of the property from residential, to which use appellant himself

subjected Tract B, and to which use he has acquiesced since it was brought into the City until after Ordinance No. 126 was passed in 1950, and which is the character of use which appellant is now profitably making of it. To be sure, the evidence would support the inference that a business use of Tract B would be more profitable to the owner than a residential one. But it is not sufficient to compel the conclusion, as a matter of law, that the district, of which Tract B forms a part, is not peculiarly suitable for residential use. The breach which appellant seeks to compel in the residential district would result in the dislocation of the City's comprehensive zoning plan. A comprehensive zoning plan can scarcely be drawn which will permit of every lot in a district being put to its most profitable use. The evidence here does not compel the conclusion that retaining the restriction as to Tract B is so very unreasonable as to be confiscatory.

The judgment should be affirmed, and it is so ordered.

Affirmed.